**EX PARTE Irving Magana GARCIA, Applicant**

**NO. WR–83,681–01**

Court of Criminal Appeals of Texas.

Filed: April 6, 2016

Irving Magana Garcia, pro se.

Luis A. Gonzalez, Office of Criminal District Attorney, Edinburg, Lisa c. McMinn, State's Attorney, Austin, for the State.

Keller, P.J., filed a concurring opinion in which Keasler and Hervey, JJ., joined.

Texas seems to be firmly in the mainstream in its procedures for appointment of counsel in post-conviction habeas cases. Our statutes, like the provision in the federal system, require appointment of counsel on habeas when the trial judge determines that the interests of justice require it.[1] The initial decision is left up to the

---

1. TEX.CODE CRIM. PROC. art. 1.051(c), art. 26.04(c).

trial court—which appears to be the most common practice among states—but this Court may also require that counsel be appointed. We do so on remand if there is to be a hearing and counsel is requested.

A concern has been raised that on habeas review, a *pro se* ineffective-assistance claim will almost always fail because a *pro se* applicant is unaware of the legal standard and evidentiary requirements necessary to establish his claim. I disagree with this assessment. Except when there are jurisdictional deficiencies, we construe *pro se* habeas applications liberally. We do not reject a claim just because it is inartfully worded or imperfectly pled. Moreover, in fiscal year 2015, we remanded 388 habeas cases to the trial court for hearings or affidavits addressing the claims. Most remanded applications are remanded on ineffective assistance claims and most, by far, are filed *pro se*. We granted relief in 184 cases in FY 2015.[2] Although this is a small percentage of cases filed, we should not expect most post-conviction habeas cases to result in relief. After all, they are challenges to final convictions, and most convictions result from guilty pleas.[3] Most habeas claims fail, but not because of pleading deficiencies. They fail because they have no merit.

Moreover, any consideration of whether our habeas procedures protect a defendant's Sixth Amendment right to trial counsel should take into account the bigger picture regarding ineffectiveness of counsel at trial and on appeal. Advances over the past fifteen years in the manner in which trial and appellate counsel are appointed in Texas have resulted in better-qualified attorneys for indigents. Starting with the Fair Defense Act in 2001, Texas has transformed the way in which counsel is appointed in criminal cases. Counties must have objective standards for appointing counsel, attorneys must obtain continuing legal education in criminal law each year, and attorneys must be on a list approved by a majority of the judges in order to receive appointments.[4] When a defendant requests counsel, an attorney must be appointed promptly.[5] Counsel must be appointed in a fair, neutral, and nondiscriminatory manner.[6]

Texas has expanded the number of public defender offices, instituted private defender offices, established mental-health public defender offices and appellate public-defender offices, created regional public defender offices for rural areas, instituted an innovative "client choice" project that includes a mentoring program for young lawyers, and published attorney caseload guidelines.[7] Spending on indigent defense statewide has risen from $91 million in 2001 to $238 million in 2015.[8] No system is perfect, but because Texas is addressing

**2.** We granted relief in 170 cases in 2014; 180 in 2013; and 221 in 2012.

**3.** A plea of guilty is not a bar to habeas relief, but relief is less likely to be warranted when a defendant admits guilt and waives various constitutional protections.

**4.** Tex.Code Crim. Proc. art. 26.04.

**5.** In counties with a population of greater than 250,000, counsel must be appointed within one working day of the request. In counties of less than 250,000, counsel must be appointed within three working days. Tex. Code Crim. Proc. art. 1.051(c).

**6.** Tex.Code Crim. Proc. art 26.04(b)(6).

**7.** Texas Indigent Defense Commission, http:// www.tidc.texas.gov/ (last visited Apr. 4, 2016).

**8.** Furthermore, last year, the Indigent Defense Commission requested an additional $196.8 million for the biennium in state funding for indigent defense. Sharon Keller, 84th Leg., Senate Committee on Finance (Part I), S.B. 2 (February 2, 2015).

effective assistance of counsel at the front end of the process, the fundamental right to counsel at trial is not left unprotected.[9]

The applicant in this case was represented by counsel at trial, on the motion for new trial, on appeal, and on his petition for discretionary review. He lost at trial, lost at the motion for new trial, lost on appeal, and lost again in this Court, but that does not mean that he received ineffective assistance of counsel. It suggests the opposite, in fact, because he raised an ineffective-assistance claim in his motion for new trial, obtained a hearing on the motion, and lost, and he raised an ineffective-assistance claim on appeal and lost. The system is not perfect, and improvements can and should be made, but the system did not fail the applicant in this case.

I join the opinion of the Court.

Alcala, J., filed a dissenting opinion in which Johnson, J., joined.

**"In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."**

This text in the Sixth Amendment of the United States Constitution ensures to all criminal defendants the right to the effective assistance of counsel at trial. *See* U.S. CONST. amends. VI, XIV. The Sixth Amendment "stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.'" *Gideon v. Wainwright,* 372 U.S. 335, 343, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). But how can the right to the effective assistance of counsel at trial be ensured if

a state has no adequate vehicle for a defendant to assert that the right was violated? As the Supreme Court has suggested recently, Texas's system for addressing claims of ineffective assistance of trial counsel has serious flaws.[1] Under the current scheme, in many cases, neither direct appeal nor a writ of habeas corpus provides a meaningful opportunity for litigants to present ineffectiveness claims. On direct appeal, which is a point in time at which an indigent appellant has the right to appointed counsel, an ineffectiveness claim usually fails due to the need for evidence outside the record, which usually cannot be presented during the narrow window of time permitted for filing a motion for new trial. Similarly, on habeas review, which is a point in time at which an indigent applicant has no right to appointed counsel, an ineffectiveness claim will almost always fail because the *pro se* applicant is unaware of the legal standard and evidentiary requirements necessary to establish his claim. Because neither direct appeal nor habeas review currently provides an adequate vehicle for raising an ineffectiveness challenge, Texas's scheme fails to ensure that the "bedrock principle" of effective assistance of counsel is fulfilled for all criminal defendants. *See Martinez v. Ryan,* —— U.S. ——; 132 S.Ct. 1309, 1317, 182 L.Ed.2d 272 (2012). This failure is apparent in the present application for a post-conviction writ of habeas corpus, in which Irving Magana Garcia, applicant, alleges that his trial counsel was ineffective, but his application is problematic because his *pro se* pleadings are inadequate to raise any colorable ineffective-assistance claim. Here, I conclude that the appropri-

---

9. The record is not entirely clear, but it appears that the attorneys who represented applicant during the entire trial/new trial/appeal process were sometimes appointed and sometimes retained.

1. *See Trevino v. Thaler,* —— U.S. ——, 133 S.Ct. 1911, 1919, 185 L.Ed.2d 1044 (2013).

ate remedy for this systemic failure is for this Court to remand this case to the habeas court with instructions to appoint counsel for the purpose of amending the instant habeas application to pursue an ineffective-assistance claim that would not be limited by the current *pro se* pleadings.[2] Because this Court instead summarily denies this application, I respectfully dissent. I explain my reasoning by (1) showing that the current Texas system fails to provide a meaningful opportunity for most indigent defendants to raise ineffective-assistance-of-trial-counsel claims, and (2) explaining that the instant record reveals a colorable ineffective-assistance claim against trial counsel, and, therefore, the *pro se* applicant requires appointed counsel in order to amend his instant pleadings, which are inadequate to present even an arguable claim.

## I. Texas's Systemic Failure to Provide An Adequate Vehicle for Raising Ineffective–Assistance–of–Counsel Claims

The Texas criminal justice system fails to provide an adequate vehicle by which an indigent defendant can raise a claim challenging the effectiveness of his trial attorney. Given that a habeas proceeding is generally recognized as the preferred vehicle for raising ineffectiveness claims in Texas,[3] and given that indigent defendants

are not afforded the assistance of appointed counsel at that procedural juncture, it is apparent that most indigent *pro se* habeas litigants will be unable to properly litigate their ineffective-assistance claims, based on their lack of the legal expertise necessary to properly raise such claims. To explain this problem in more detail, (A) I review the applicable legal standard for ineffective-assistance-of-counsel claims to show that it is a high bar that cannot likely be met by most *pro se* litigants, even those with likely meritorious claims, and (B) I show that, without the assistance of counsel on habeas for raising ineffectiveness claims, such claims will largely go unaddressed, thereby leaving unprotected the fundamental Sixth Amendment right to the effective assistance of trial counsel.

## A. The Standard for Ineffective–Assistance–of–Counsel Claims is Demanding

The relevant legal standard for establishing a claim of ineffective assistance of trial counsel is rigorous, and it is in no way conducive to *pro se* litigation. To prevail on a claim of ineffectiveness, an applicant must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, an applicant must demonstrate deficient performance by showing that his

**2.** There may be other ways to fix Texas's inadequate system for ensuring the right to effective counsel that are not pertinent here, such as changing the Texas Rules of Appellate Procedure to extend the period of time permitted for motions for new trial so that defendants could have the benefit of the trial record and time to investigate ineffectiveness claims. *See* Tex.R.App. P. 21.4(a) (providing thirty-day window after imposition or suspension of sentence in open court for filing motion for new trial); *see also Robinson v. State*, 16 S.W.3d 808, 810–11 (Tex.Crim.App.2000) (observing that "there is generally not a realistic opportunity to adequately develop the record for appeal in post-trial motions" for the purpose of raising an ineffective-assis-

tance claim; "in most cases, the pursuit of such a claim on direct appeal may be fruitless"). Because any such measures would be purely prospective in their application to future cases, I do not consider them at length here.

**3.** *See Andrews v. State*, 159 S.W.3d 98, 102 (Tex.Crim.App.2005) ("[W]e have said that the record on direct appeal is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance and that the better course is to pursue the claim in habeas proceedings.").

attorney's representation fell below an objective standard of reasonableness, as judged by prevailing professional norms. *Id.* at 690, 104 S.Ct. 2052. In order to do so, an applicant must overcome the strong presumption that counsel's conduct was reasonable. *See Burt v. Titlow,* —— U.S. ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) ("We have said that counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment,' and that the burden to 'show that counsel's performance was deficient' rests squarely on the defendant.") (quoting *Strickland,* 466 U.S. at 687, 690, 104 S.Ct. 2052); *Ex parte Overton,* 444 S.W.3d 632, 640 (Tex.Crim.App.2014) ("There is a strong presumption that counsel's conduct was reasonable and judicial scrutiny of it will be highly deferential.").[4] A claimant must generally prove deficiency using affirmative evidence in the record sufficient to overcome the presumption that the challenged action was sound trial strategy. *Ex parte Bryant,* 448 S.W.3d 29, 39 (Tex. Crim.App.2014).

Second, an applicant must demonstrate prejudice by establishing that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.;* *see also id.* at 686, 104 S.Ct. 2052 (explaining that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result").

As the Supreme Court has recognized, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). In light of the demanding requirements for satisfying the *Strickland* standard, it is difficult to imagine that most *pro se* litigants untrained in the law could prevail in meeting this high standard.

**B. The Issue is Effective Assistance of Counsel at Trial**

I conclude that habeas counsel should be appointed in this case to pursue ineffective-assistance-of-counsel claims against counsel at trial, in accordance with the established legal principle that a defendant has a constitutional right to the effective assistance of counsel at that stage of his criminal proceedings. My conclusion is not premised on the existence of a general right to habeas counsel, but is instead rooted in the constitutional right to the effective assistance of counsel at trial.

**1. There is Currently No General Constitutional Right to Habeas Counsel**

Here, this case reaches this Court by a *pro se* habeas application, and it would be tempting to disregard the absence of counsel at this juncture with the simple proposition that there is no general constitutional right to the assistance of counsel on

---

4. *See also Ex parte Bryant,* 448 S.W.3d 29, 39 (Tex.Crim.App.2014) ("[A]ppellate scrutiny of the performance of counsel is highly deferential, and trial counsel's performance is assessed by the totality of the circumstances as they existed at the time of trial, not with the benefit of hindsight or by relying on only isolated circumstances at trial."); *Andrews,*

159 S.W.3d at 101 (explaining that, in evaluating deficient performance, "we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it").

collateral review of a criminal conviction. *See Pennsylvania v. Finley,* 481 U.S. 551, 554–55, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (explaining that the Supreme Court has "never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions," and concluding that a state habeas petitioner has "no such right [to appointed counsel] when attacking a conviction that has long since become final upon exhaustion of the appellate process").[5] Because the Supreme Court has already determined in *Finley* that a habeas applicant does not have a general constitutional right to appointed counsel in a post-conviction proceeding, I do not attempt to revisit that determination here. *See id.*[6]

I, therefore, am not suggesting at this juncture that all habeas applicants be appointed counsel to pursue their claims. Rather, I am suggesting that, when a habeas applicant has complained of ineffective assistance of trial counsel, and when it appears to a habeas court that a colorable claim exists, based either on the substance of the *pro se* pleadings or in light of the record, the habeas court should appoint counsel for such an applicant to pursue

that claim in order to ensure that he has been afforded his constitutional right to the effective assistance of counsel.

### 2. There is a Right to Effective Counsel at Trial

The issue at stake here is the right to the effective assistance of counsel at trial and the need for Texas to provide a meaningful avenue for litigants to vindicate that constitutional right. *See Gideon,* 372 U.S. at 344, 83 S.Ct. 792. The question, therefore, is whether Texas currently has an adequate procedural scheme by which an indigent defendant may raise a challenge to the effectiveness of counsel. I conclude that it does not. More importantly, the Supreme Court has determined (a) that Texas's current scheme constitutes an inadequate vehicle by which an indigent defendant may raise an ineffective-assistance claim and, therefore, presents an unacceptable risk that meritorious claims will go unremedied, and (b) that the problem is significant enough that it was necessary to alter the federal approach to resolving these claims left unaddressed due to the inadequacies of Texas's system. After ex-

---

5. *See also Ex parte Graves,* 70 S.W.3d 103, 110 (Tex.Crim.App.2002) ("It is a well established principle of federal and state law that no constitutional right to effective assistance of counsel exists on a writ of habeas corpus.... [A] convicted person has no constitutional right to *any* counsel, much less 'constitutionally effective' counsel, in either discretionary appeals or on writs of habeas corpus[.]").

6. I note here that, in *Martinez v. Ryan,* the Supreme Court clarified that it remains an open question of constitutional law "whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *See* —— U.S. ——, 132 S.Ct. 1309, 1315, 182 L.Ed.2d 272 (2012). As the Supreme Court noted in *Martinez,* "the Constitution may require States to provide counsel in initial-review collateral proceedings be-

cause 'in [these] cases ... state collateral review is the first place a prisoner can present a challenge to his conviction.' " *Id.* (quoting *Coleman v. Thompson,* 501 U.S. 722, 755, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The Court in *Martinez* observed that such a procedure "makes the initial-review collateral proceeding a prisoner's 'one and only appeal' as to an ineffective-assistance claim, and this may justify an exception to the constitutional rule that there is no right to counsel in collateral proceedings." *Id.* (quoting *Coleman,* 501 U.S. at 755, 111 S.Ct. 2546). Although the Supreme Court expressly declined to reach that constitutional question in *Martinez,* the Court has never foreclosed the possibility of such a limited constitutional right to the effective assistance of counsel in a post-conviction proceeding for the purpose of raising a Sixth Amendment ineffectiveness challenge.

amining in (c) the approach for resolving this type of problem in federal and other state courts, I conclude in (d) that this Court may employ the current statutes for appointing habeas counsel in order to ensure that defendants' substantial claims of ineffective assistance of trial counsel are afforded meaningful consideration on post-conviction review.

### a. Texas's Scheme is Inadequate to Protect Defendants' Sixth Amendment Rights

The Supreme Court has recently addressed the inadequacies in Texas's system for litigating claims of ineffectiveness of trial counsel. *See Trevino v. Thaler,* 569 U.S. ——, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013). With respect to the inadequacy of a direct appeal for raising such a claim, the Supreme Court observed in *Trevino* that the "structure and design of the Texas system in actual operation" makes it " 'virtually impossible' for an ineffective assistance claim to be presented on direct review." *Id.* at 1915 (quoting *Robinson v. State,* 16 S.W.3d 808, 810 (Tex.Crim.App. 2000)). It explained that the reason that a

direct appeal is generally inadequate is because " 'the inherent nature of most ineffective assistance' of trial counsel 'claims' means that the trial court record will often fail to 'contai[n] the information necessary to substantiate' the claim." *Id.* at 1918 (quoting *Ex parte Torres,* 943 S.W.2d 469, 475 (1997)). Additionally, it observed that, although a motion for new trial may in some cases provide a means to develop the record on appeal, that vehicle "is often inadequate because of time constraints and because the trial record has generally not been transcribed at this point.' " *Id.* (quoting *Torres,* 943 S.W.2d at 475).[7] In light of the need for evidence outside the trial record and the relevant time constraints, the Supreme Court determined that "the Texas procedural system—as a matter of its structure, design, and operation—does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 1921. Thus, although Texas law "appears at first glance to permit ... the defendant initially to raise a claim of ineffective assistance of trial counsel on direct appeal," the system,

---

7. In addition to the authorities cited above, the Supreme Court cited several provisions in the Texas Rules of Appellate Procedure in support of the proposition that direct appeal is an inadequate vehicle for bringing an ineffective-assistance-of-trial-counsel claim. *See Trevino,* 133 S.Ct. at 1918–19 (citing Tex. R.App. Proc. 21.4 (2013) (motion for a new trial must be made within 30 days of sentencing); Rules 21.8(a), (c) (trial court must dispose of motion within 75 days of sentencing); Rules 35.2(b), 35.3(c) (transcript must be prepared within 120 days of sentencing where a motion for a new trial is filed and this deadline may be extended)). It also cited several of this Court's opinions, as well as a treatise from professors Dix and Schmolesky. *See id.* at 1919 (citing *Thompson v. State,* 9 S.W.3d 808, 813–814, and n. 6 (Tex.Crim.App.1999) ("[I]n the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual

prongs of *Strickland"*; only "[r]arely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim ..."); *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim.App.2005) (similar); *Andrews,* 159 S.W.3d at 102–103 (similar); *Ex parte Brown,* 158 S.W.3d 449, 453 (Tex.Crim.App.2005) (*per curiam* ) (similar); *Jackson v. State,* 973 S.W.2d 954, 957 (Tex.Crim.App.1998) (*per curiam*) (similar); 42 G. Dix & J. Schmolesky, Texas Practice Series § 29:76, pp. 844–845 (3d ed.2011) (hereinafter Texas Practice) (explaining that "[o]ften" the requirement that a claim of ineffective assistance of trial counsel be supported by a record containing direct evidence of why counsel acted as he did "will require that the claim ... be raised in postconviction habeas proceedings where a full record on the matter can be raised")).

in actual operation, makes it "virtually impossible" to adequately present that type of claim at that procedural juncture. *See id.* at 1915.

The Supreme Court has also suggested that a Texas post-conviction writ application, if undertaken without the effective assistance of counsel, is an inadequate vehicle for litigating ineffective-assistance claims. *See id.* at 1919–20; *see also Martinez v. Ryan,* —— U.S. ——, 132 S.Ct. 1309, 1317, 182 L.Ed.2d 272 (2012). In *Trevino,* the Court indicated that the lack of representation, or ineffective representation, in a Texas post-conviction proceeding could "deprive a defendant of any review of [an ineffective-assistance-of-trial-counsel] claim at all." *Trevino,* 133 S.Ct. at 1918. The Court stated, "[A]s the Court of Criminal Appeals has concluded, in Texas 'a writ of habeas corpus' issued in state collateral proceedings ordinarily 'is essential to gathering the facts necessary to … evaluate … [ineffective-assistance-of-trial-counsel] claims,'" and, therefore, "collateral review normally constitutes the preferred—and indeed as a practical matter, the only—method for raising an ineffective-assistance-of-trial-counsel claim." *Id.* at 1918, 1920 (quoting *Torres,* 943 S.W.2d at 475).

Although Texas has provided a vehicle—an application for a writ of habeas corpus under Article 11.07 of the Code of Criminal Procedure—for presenting complaints about the effectiveness of trial counsel, the problem is that indigent defendants have no right to counsel at that juncture. Moreover, ineffectiveness claims require factual and legal development in order to meet *Strickland's* rigid standard of proof. The Supreme Court discussed this problem in *Martinez,* in which it stated,

> Without the help of an adequate attorney, a prisoner will have [ ] difficulties vindicating a substantial ineffective-assistance-of-trial-counsel claim [on habeas review]. Claims of ineffective assistance at trial often require investigative work and an understanding of trial strategy. When the issue cannot be raised on direct review, moreover, a prisoner asserting an ineffective-assistance-of-trial-counsel claim in an initial-review collateral proceeding cannot rely on a court opinion or the prior work of an attorney addressing that claim. To present a claim of ineffective assistance at trial in accordance with the State's procedures, then, a prisoner likely needs an effective attorney.

*Martinez,* 132 S.Ct. at 1317. The Court further reasoned that prisoners are generally "unlearned in the law" and "may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law." *Id.* And it observed that, "[w]hile confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record." *Id.* Thus, the Court concluded that, when a state's system for litigating ineffectiveness claims has the effect of "mov[ing] trial ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed, the State significantly diminishes prisoners' ability to file such claims." *Id.* at 1318.

The problem can be quickly summarized like this: "Texas courts in effect have directed defendants to raise claims of ineffective assistance of trial counsel on collateral, rather than direct, review," which is a point of the proceedings at which defendants have no right to counsel. *Trevino,* 133 S.Ct. at 1919. Because "the Texas procedural system would create significant unfairness" in light of its failure to allow litigants to adequately pursue their complaints in state court, the Supreme Court

changed its approach so that federal courts would be permitted to address state ineffective-assistance-of-counsel claims as if those claims were presented for the first time in a federal habeas proceeding. *Id.*

### b. The Federal Approach Has Changed Due to Texas's Deficiencies

Texas's problem in failing to provide an adequate mechanism for indigent defendants to complain about the ineffectiveness of trial counsel was significant enough that the Supreme Court decided to craft an equitable remedy in federal court to address this situation. This is important because, even though the Supreme Court identified this problem as being so significant as to require a federal equitable remedy, this Court has, as yet, declined to even consider whether any problem exists. Furthermore, as a result of this Court's inaction in this area, federal courts are now resolving state ineffectiveness claims in the first instance without any deference to state-court decisions about state-court cases. Thus, in many cases, state appellate courts have become inconsequential to ineffective-assistance-of-counsel claims that are later reviewed for the first time on the merits in federal court. Here, therefore, this applicant will likely be able to obtain merits review of his substantial ineffective-assistance claim in the first instance in federal court because this Court has refused to ensure that he is appointed counsel for purposes of asserting his claim in state court. This Court's inaction thus makes this Court irrelevant for purposes of this type of litigation.

Given its recognition that an initial state habeas proceeding undertaken without the effective assistance of counsel would effectively deprive Texas defendants of any meaningful review of their ineffective-assistance claims, the Supreme Court crafted a federal equitable remedy that would permit such claims to be raised and adjudicated for the first time on federal habeas review. *See id.* at 1921. The Supreme Court held that, where a state procedural framework makes it highly unlikely that a defendant will have a meaningful opportunity to raise an ineffective-assistance claim on direct appeal, a procedural default " 'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.' " *Id.* (quoting *Martinez*, 132 S.Ct. at 1320). The Court reasoned that such an equitable remedy was necessary in order to protect the "critically important" right to the "adequate assistance of counsel at trial," given that claims pertaining to that right would involve the "need for a new lawyer, the need to expand the trial court record, and the need for sufficient time to develop the claim." *Id.*

In reaching its conclusion in *Trevino,* the Supreme Court relied upon the reasoning in its former opinion in *Martinez,* in which it had similarly held that Arizona's scheme for litigating ineffective-assistance-of-trial-counsel claims, which required that such claims be raised on collateral review, was inadequate to ensure that valid Sixth Amendment claims were afforded meaningful consideration. *Martinez,* 132 S.Ct. at 1315, 1319. In *Martinez,* the Court observed that, although federal habeas courts are generally barred from considering any claim that has not first been properly presented and adjudicated in state court, an exception to that general rule was required under these circumstances in order to "protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel." *Id.* at 1315.

It was within the context of this recognition—that a convicted person cannot rea-

sonably be expected to raise a viable *pro se* challenge to the effectiveness of his trial attorney without the assistance of counsel—that the Supreme Court crafted the equitable remedy in *Martinez* and *Trevino* that would permit such litigants to raise their substantial claims for the first time in a federal habeas proceeding. *See id.* The Supreme Court held that the creation of an equitable exception to its normal procedural-default rules was appropriate in light of fact that "the initial collateral review proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Id.*; *Trevino*, 133 S.Ct. at 1919. Given that the right at issue—the right to the effective assistance of counsel at trial—is a "bedrock principle in our justice system," the Court reasoned that such an equitable exception was necessary to ensure that substantial ineffective-assistance claims were given meaningful consideration. *Martinez*, 132 S.Ct. at 1317.

It is true that the holdings of *Martinez* and *Trevino* do not establish a broad constitutional right to the effective assistance of post-conviction counsel. *See In re Sepulvado*, 707 F.3d 550, 556 (5th Cir.2013); *Chunestudy v. State*, 2014 Ark. 345, 438 S.W.3d 923, 930 (2014) ("*Trevino* clarified aspects of *Martinez* but it did not require states to provide counsel to every petitioner in a collateral attack on a judgment."). And it is also true that the equitable rule

created by those cases does not apply directly in state court. *See Banks v. State*, 150 So.3d 797, 799–800 (Fla.2014) ("We have held that *Martinez* applies only to federal habeas proceedings and does not provide an independent basis for relief in state court proceedings.... Nor does *Trevino*."); *Evans v. State*, 868 N.W.2d 227, 229 n. 3 (Minn.2015) (observing that holdings of *Martinez* and *Trevino* "pertain to the doctrine of procedural default in federal habeas cases and are inapplicable in state-court proceedings"). Nevertheless, the reasoning underlying *Martinez* and *Trevino* applies with equal force in state courts as it does in federal courts, and the wisdom of those cases should serve as a starting point for "an important dialogue ... about what procedures states need to have to give defendants an opportunity to vindicate their Sixth Amendment rights to effective trial counsel." [8] *See Commonwealth v. Holmes*, 621 Pa. 595, 79 A.3d 562, 583 (2013) (observing that *Martinez* and *Trevino* reaffirmed "the centrality of claims of ineffective assistance of trial counsel," the "bedrock importance of effective counsel at trial," and the "derivative importance of opportunities to litigate claims of trial counsel ineffectiveness"). The reasoning of those cases strongly suggests that, by channeling ineffective-assistance claims to post-conviction review, which is a stage at which most defendants are unrepresented by counsel, the current Texas scheme presents an unacceptable

---

**8.** *See* Eve Brensike Primus, *Effective Trial Counsel After Martinez v. Ryan: Focusing on the Adequacy of State Procedures*, 122 Yale L.J. 2604, 2624–25 (2013) (arguing that, although it has "long been the case that a majority of states routinely underenforce defendants' Sixth Amendment rights to counsel by erecting procedural regimes that effectively prevent them from ever challenging their trial attorneys' performance," *Martinez* "demonstrates that the [Supreme] Court has noticed this problem and is willing to use its equitable

habeas power to begin addressing it"). Primus additionally notes that, "[i]f *Martinez's* expanded grounds for cause [for excusing procedural default in federal court] do not send a strong enough message to the majority of states about the need to reform their procedures, the federal courts can use other, broader equitable doctrines ... to catalyze change," including a possible federal "recognition of a constitutional right to counsel on initial collateral review." *Id.* at 2625.

risk that defendants' valid Sixth Amendment claims will go unremedied. One legal commentator has recognized this problem by asking, "[H]ow does a criminal defendant remedy the deprivation of a right that he cannot raise procedurally until he is no longer constitutionally entitled to an attorney?" [9] In answer to this problem, I propose that, in order to give full effect to the dictates in the federal Constitution that guarantee the effective assistance of trial counsel to all criminal defendants, Texas must either, on the one hand, alter its procedural scheme to afford indigent defendants a meaningful opportunity to raise ineffectiveness claims on direct appeal, or on the other hand, remand colorable ineffective-assistance claims to the habeas court for it to appoint counsel.[10] Because the instant case reaches this Court at the habeas stage, only the latter of these two options is applicable here.

### c. Federal Courts and Other State Procedures for Appointing Habeas Counsel

Other jurisdictions employ a multitude of approaches to appointing counsel for *pro se* habeas petitioners, and, although most of these approaches are based on the particular statutes in each jurisdiction, they are nevertheless instructive in providing general guidelines for when counsel should be appointed. In a federal habeas proceeding, the magistrate or federal district court judge has the discretion to appoint counsel to a "financially eligible person" whenever the judge "determines that the interests of justice so require." U.S.C. § 3006A(a)(2)(B). The United States Third Circuit Court of Appeals has explained that, in determining whether counsel should be appointed under this provision, a court "must first decide if [the] petitioner has presented a nonfrivolous claim and if the appointment of counsel will benefit the petitioner and the court. Factors influencing a court's decision include the complexity of the factual and legal issues in the case, as well as the *pro se* petitioner's ability to investigate facts and present claims." *Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir.1991).[11] This provision leaves to the "sound discretion of the district court" whether to appoint counsel. *See Engberg v. Wyoming*, 265 F.3d 1109, 1122 n. 10 (10th Cir.2001). In addition to the statutory provision permit-

---

**9.** *See* Ty Alper, *Toward a Right to Litigate Ineffective Assistance of Counsel*, 70 Wash. & Lee L. Rev. 839, 840, 845–46 (2013) (observing that, as a practical matter, "the current state of the law ensures that the vast majority of convicted noncapital defendants have no recourse to raise ineffective assistance of counsel claims, and thus no mechanism for vindicating the requirement that the counsel *Gideon* provides be effective"; "so long as noncapital defendants are not provided postconviction counsel, [ ] most violations of the fundamental right to counsel at trial are likely to go unremedied"). In response to this quandary, Professor Alper suggests that courts should recognize "a narrow[ ] yet critical right to raise a claim of ineffective assistance of trial counsel in at least one forum" at a stage when the litigant is represented by counsel. *Id.* at 846.

**10.** *See Alper, supra* note 9, at 852 ("[F]or the bedrock principle of *Gideon* to provide meaningful protection to the indigent-accused, counsel must be afforded to allow for the presentation of ineffective assistance of trial counsel claims.").

**11.** *See also Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir.1994) (in deciding whether it is suitable to appoint counsel in a federal habeas proceeding, a court considers the legal and factual complexity of the petition and the petitioner's ability to present the claims, among other factors); *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir.1983) ("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims ... in light of the complexity of the legal issues involved.").

ting discretionary appointment of counsel in the interests of justice, the federal rules governing habeas proceedings require the appointment of counsel if it is necessary for the effective utilization of discovery procedures, or whenever an evidentiary hearing is required. *See* Rules Governing § 2255 Proceedings, Rules 6(a), 8(c).

With respect to the approaches taken by state courts, in *Martinez*, the Supreme Court noted that "[m]ost jurisdictions have in place procedures to ensure counsel is appointed for substantial ineffective-assis-

tance claims." *Martinez*, 132 S.Ct. at 1319. The Court observed that some states "appoint counsel in every first collateral proceeding," and it identified eight states that routinely appoint counsel to every indigent habeas applicant. *Id.*[12] Other states, it explained, appoint counsel "if the claims require an evidentiary hearing, as claims of ineffective assistance often do." *Id.*[13] And, it further observed that other states "appoint counsel if the claims have some merit to them or the state habeas trial court deems the record worthy of further development."[14]

**12.** The Court cited statutes from Alaska (Alaska Stat.18.85.100(c)); Arizona (Ariz. Rule Crim. Proc. 32.4(c)(2)); Connecticut (Conn. Gen. Stat. § 51–296(a)); Maine (Me. Rules Crim. Proc. 69, 70(c)); North Carolina (N.C.Gen.Stat.Ann. § 7A–451(a)(2)); New Jersey (N.J. Ct. Rule 3:22–6(b)); Rhode Island (R.I. Gen Laws § 10–9.1–5); and Tennessee (Tenn.Code Ann. § 8–14–205). In addition to these states, I note that Pennsylvania routinely appoints counsel in the initial round of habeas proceedings as a matter of right, upon the defendant's filing of such a petition. *See* Pa. R.Crim. Proc. 904(c).

**13.** Here, the court cited provisions from Kentucky (Ky. Rule Crim. Proc. 11.42(5) (if an application raises a "material issue of fact that cannot be determined on the face of the record the court shall grant a prompt hearing and, if the movant is without counsel of record and if financially unable to employ counsel, shall upon specific written request by the movant appoint counsel to represent the movant in the proceeding, including appeal"); Louisiana (La. Code Crim. Proc. art. 930.7) ("If the petitioner is indigent and alleges a claim which, if established, would entitle him to relief, the court may appoint counsel."; court "shall appoint counsel" if an evidentiary hearing is held on the merits of the claim); Michigan (Mich. Rule Crim. Proc. 6.505(A) ("If the defendant has requested appointment of counsel, and the court has determined that the defendant is indigent, the court may appoint counsel for the defendant at any time during the proceedings under this subchapter."; counsel "must be appointed" if a hearing is ordered); and South Carolina (S.C. Rule Civ. Proc. 71.1(d) ("If, after the State has filed its return, the application presents

questions of law or fact which will require a hearing, the court shall promptly appoint counsel to assist the applicant if he is indigent. Counsel shall be given a reasonable time to confer with the applicant. Counsel shall insure that all available grounds for relief are included in the application and shall amend the application if necessary.").

**14.** In support of this proposition, the Court cited statutes and case law from Arkansas (Ark. Rule Crim. Proc. 37.3(b); *Hardin v. Arkansas*, 350 Ark. 299, 86 S.W.3d 384, 385 (2002) (courts have "discretion" to appoint counsel for post-conviction proceedings; exercise of discretion depends on whether appellant makes a substantial showing that his claim has merit and that he cannot proceed without counsel); Colorado (Colo. Rule Crim. Proc. 35; *Kostal v. People*, 167 Colo. 317, 447 P.2d 536 (1968) (if application contains "no allegations of facts" on which relief can be granted, then appointment of counsel is unnecessary); Delaware (Del.Super. Ct. Rule Crim. Proc. 61(e)(1) (permitting appointment of counsel in the exercise of discretion and good cause shown); Indiana (Indiana Rule Post–Conviction Remedies Proc. 1, § 9(a) (public defender may represent indigent habeas petitioner if public defender determines that proceedings are meritorious and in the interests of justice); Kansas (Kan.Stat.Ann. § 22–4506) (court shall appoint counsel if it determines that habeas petition presents substantial questions of law or triable issues of fact); New Mexico (N.M. Dist. Ct. Rule Crim. Proc. 5–802) (if the court does not order summary dismissal, counsel shall be appointed); Idaho (*Hust v. State*, 147 Idaho 682, 214 P.3d

The approaches taken by other jurisdictions are informative in highlighting the types of considerations that may give rise to a finding that appointment of counsel is necessary in a post-conviction proceeding. These approaches are consistent in suggesting that, in determining whether to appoint counsel, courts should consider whether the face of the record indicates the presence of disputed or unresolved factual issues that are in need of development, whether the legal issues presented are so complex as to make it unlikely that a *pro se* litigant could adequately address them, whether the pleadings or other information in the record reveals the existence of a plausible basis for relief or the possible existence of a non-frivolous claim, whether the legal questions presented are substantial, and whether the interests of justice require appointment of counsel.

I would employ these types of considerations in determining whether, under the existing Texas statutes, which I discuss in more detail next, counsel should be appointed to *pro se* habeas litigants seeking to challenge the effectiveness of their trial attorneys. *See* Tex.Code Crim. Proc. art. 11.07, § 3(d).[15]

### d. Current Texas Statutes Permit Appointment of Habeas Counsel

The problem in Texas is not that existing statutes fail to permit this Court to ensure that counsel is appointed to assist applicant in pursuit of his ineffective-assistance-of-counsel claim, but rather is that this Court generally does not utilize those statutes in such a way as to ensure that counsel is appointed for indigent habeas applicants who have colorable ineffective-assistance claims, based either on the substance of the *pro se* pleadings or in light of the record. Code of Criminal Procedure Article 11.07 provides that "[t]he convicting court may appoint an attorney or magistrate to hold a hearing and make findings of fact." Tex.Code Crim. Proc. art. 11.07, § 3(d). Thus, anytime a hearing is deemed necessary, Article 11.07 expressly authorizes appointment of counsel. In addition, the Code of Criminal Procedure more generally permits a court to appoint counsel in any criminal proceeding "if the

668, 669 (2009) (where *pro se* pleadings fail to demonstrate the "possibility of a non-frivolous claim," appointment of counsel unnecessary); North Dakota (*Jensen v. State,* 688 N.W.2d 374, 378 (N.D.2004) (appointment of counsel in habeas proceedings is within trial court's sound discretion; "a trial court should read applications for post-conviction relief in the light most favorable to the applicant, and when a substantial issue of law or fact may exist, the trial court should appoint counsel"); and the District of Columbia (*Wu v. United States,* 798 A.2d 1083, 1089 (D.C.2002) (prisoner's request for counsel in post-conviction proceeding is within sound discretion of trial court; where the prisoner's motion is "palpably incredible ... fails to state a claim ... is vague and conclusory, the appointment of counsel is not required").

**15.** I note here that the Texas Legislature recently enacted a statute that provides for the mandatory appointment of counsel in habeas proceedings under certain circumstances. *See* Tex.Code Crim. Proc. art. 11.074. That statute provides that, upon a representation by the State that an indigent applicant is entitled to relief on the basis that he is not guilty, that he is guilty only of a lesser offense, or that he was convicted under a law that has been declared unconstitutional by this Court or the Supreme Court, then the court shall appoint counsel to represent him in a post-conviction habeas proceeding. *Id.* Although this statute is limited in scope, it evinces a willingness by the Legislature to expand upon the availability of appointed counsel in habeas proceedings under some circumstances, and it further evinces a recognition that habeas proceedings undertaken without the assistance of counsel may not be effective in vindicating an applicant's constitutional rights.

court concludes that the interests of justice require representation." *Id.* art. 1.051(c). And, more particularly, the Code mandates that an "eligible indigent defendant is entitled to have the trial court appoint an attorney to represent him" in "a habeas corpus proceeding if the court concludes that the interests of justice require representation." *Id.* art. 1.051(d)(3). The existing statutes, therefore, provide an adequate basis upon which to conclude that appointment of counsel is required in any case in which either the pleadings or the face of the record gives rise to a colorable, nonfrivolous claim for which legal expertise is required in order to ensure that the claim is afforded meaningful consideration.

It has been suggested that Texas already spends enough money on the representation of indigent defendants and essentially that enough is enough. Although I agree that Texas has improved its procedures for appointing qualified attorneys in criminal cases, the narrower problem that the Supreme Court identified with Texas's system for resolving ineffective-assistance-of-counsel claims is one that has only recently drawn close scrutiny. The Supreme Court acknowledged that, because of the lack of appointed counsel for the purpose of raising ineffectiveness claims on habeas, litigants with meritorious claims may be deprived of any meaningful opportunity to present their claims. And the problem was significant enough that the Supreme Court had to modify its federal procedural-default law in order to now permit federal courts to review these state claims in the first instance without deference to state courts. The Supreme Court's reasoning in *Martinez* and *Trevino* refutes any suggestion that the existing safeguards for providing quality appointed counsel at trial and on direct appeal are adequate to prevent valid claims of ineffectiveness from arising in the first place.

It is true that some indigent defendants are capable of adequately raising ineffective-assistance claims on their own, and it is further true that this Court occasionally remands cases to the habeas court for appointment of counsel. But such cases are the exception to the rule. I note that, although this Court remanded a total of 388 habeas cases to the habeas court for hearings or affidavits in fiscal year 2015, and it granted relief in 184 cases, those numbers do not particularly address ineffective-assistance claims, *pro se* habeas applications, or the number of applicants who received appointed counsel. In any event, these cases constitute a very small percentage of the 4,698 habeas applications that were filed in that year. *See* Annual Statistical Report for the Texas Judiciary, Fiscal Year 2015, Court of Criminal Appeals Activity Report, Detail 4. As such, I am unpersuaded that the occasional success of *pro se* habeas litigants in raising ineffectiveness challenges renders this problem unworthy of our attention. And, regardless of my personal view that this issue is substantially important and deserving of this Court's attention, I note that the issue was deemed significant enough by the Supreme Court for it to recognize the problem and craft an equitable remedy in order to address it. That should be enough for this Court to decide that the problem is worthy of our attention.

Applying the foregoing considerations to the present case, I would accordingly hold that this indigent habeas applicant is entitled to appointed counsel for the purpose of presenting his claim that trial counsel was ineffective, given that, as explained further below, the face of the record reveals the existence of a non-frivolous claim. I would, therefore, remand this case to the habeas court for it to appoint habeas counsel, who would then be permitted to amend the instant habeas application.

## II. The Instant Record Shows that Trial Counsel May Have Been Ineffective

Although applicant's *pro se* pleadings are inadequate to give rise to any colorable ineffective-assistance claims, this record, on its face, reveals the existence of facts that suggest that applicant's trial counsel may have been constitutionally ineffective. In section A, I show that applicant has a colorable ineffective-assistance claim based on the record in this case, which reveals that applicant was deprived of a language interpreter at his trial due to counsel's erroneous advice that an interpreter would interfere with his ability to represent applicant at trial. Then, in section B, I examine applicant's present application for a writ of habeas corpus to demonstrate that it is inadequate to present any colorable ineffective-assistance claim, and, therefore, that appointment of habeas counsel is necessary to investigate and pursue any viable claims.

### A. Applicant Has a Colorable Claim Alleging Ineffective Assistance of Counsel

16. The failure to appoint an interpreter can implicate the federal constitutional right to confront the witnesses. See *Baltierra v. State,* 586 S.W.2d 553, 556–57 (Tex.Crim.App.1979) (discussing right to interpreter under Confrontation Clause); *United States v. Lim,* 794 F.2d 469, 470 (9th Cir.1986) (noting that "a defendant whose fluency in English is so impaired that it interferes with his right to confrontation or his capacity, as a witness, to understand or respond to questions has a constitutional right to an interpreter").

17. The court of appeals determined that the direct-appeal record failed to show that trial counsel was ineffective, but it did so on the limited record before it that failed to elaborate on counsel's reasons for declining an interpreter. *Garcia v. State,* No. 13–11–00547–CR, 2013 Tex.App. LEXIS 2328, 2013 WL 865411, at *6 (Tex.App.—Corpus Christi

At his trial for murder, applicant, who speaks only Spanish, was deprived of his constitutional right to have the assistance of an interpreter who would translate the testimony and the proceedings into a language that applicant could understand.[16] This occurred because applicant's attorney told him that having an interpreter would interfere with counsel's ability to concentrate.[17] In my statement dissenting to this Court's denial of applicant's motion for rehearing as to this Court's opinion on discretionary review, I explained the absurdity of that advice, stating,

> By doing nothing apart from asking trial counsel if appellant wanted an interpreter, the trial court judge was either uninformed of his absolute duty to obtain an effective waiver from appellant or unwilling to do so. This problem was compounded by the conduct of trial counsel, who apparently believed himself to be so inept that he would be unable to concentrate on witness testimony merely because of the presence of an interpreter. In light of the fact that the interpreter translated the testimony of many of the Spanish-speaking witnesses into English for the jury, trial counsel's rea-

Mar. 7, 2013) (mem. op., not designated for publication). It stated,

> At the hearing on [applicant's] motion for new trial, counsel, himself, clearly articulated his reasons for his decision not to request an English-to-Spanish interpreter. He explained that he did not want an interpreter because the interpreter would distract both him and the jury. The prosecutor did testify that counsel informed her that he did not want an interpreter for [applicant] because [counsel] did not "really want him to know what's going on." However, except for this testimony, the record is silent regarding counsel's tactical decision, if for this reason.... No one elicited specific testimony from counsel or further testimony from the prosecutor regarding this alleged motivation for counsel's strategic decision.
> *Id.*

soning that he would be unable to concentrate if the interpreter also translated the testimony of English-speaking witnesses into Spanish for appellant lacked any logical foundation and was misguided. Based on the absence of information from the trial court judge and the misguided representations by trial counsel, appellant cannot rationally be characterized as having been adequately informed of his rights so as to have been able to make an intelligent, knowing, and voluntary waiver of his federal constitutional right to an interpreter.

*Garcia v. State*, 429 S.W.3d 604, 621 (Tex. Crim.App.2014) (Alcala, J., dissenting from denial of rehearing). Based on my earlier statements in this case, it appears that applicant has a colorable claim of ineffective assistance of trial counsel due to counsel's failure to request a language interpreter for applicant.

When applicant had appellate counsel on direct appeal, that counsel did raise a colorable claim of ineffective assistance of trial counsel, but the court of appeals determined that, based on the limited record before it at that time, counsel's decision to reject the assistance of an interpreter was reasonable trial strategy. *See Garcia v. State*, No. 13–11–00547–CR, 2013 WL 865411 (Tex.App.—Corpus Christi Mar. 7, 2013) (not designated for publication) (concluding that "Garcia failed to demonstrate, on this record, deficient performance by his trial counsel"). I strongly disagree with that assessment by the appellate court. But, even though the court of appeals already decided that issue, that would not preclude applicant from presenting new evidence in support of his ineffec-

tiveness claim and pursuing a similar claim on post-conviction review after more fully developing the record in the case.[18]

On appellant's petition for discretionary review, this Court's majority opinion upheld a separate determination by the court of appeals that applicant had knowingly, intelligently, and voluntarily waived his right to an interpreter. *See Garcia*, 429 S.W.3d at 609. But this Court did not grant review as to the question before us in this habeas application with respect to whether applicant was deprived of the effective assistance of trial counsel. Thus, this Court has never considered whether counsel's actions in declining the services of an interpreter could constitute valid trial strategy.

In his instant application, applicant contends that trial counsel was ineffective but, because he is proceeding *pro se* at this juncture, the claims he has presented are not viable. In spite of applicant's failure to present this Court with a viable claim on habeas, even on the face of the existing record, it is apparent that a plausible basis exists for asserting that applicant's trial counsel lacked any sound trial strategy in suggesting that applicant should waive his right to a language interpreter. I note here that at least two other state supreme courts have held that a criminal-defense attorney lacked any reasonable trial strategy in declining the services of an interpreter for a non-English-speaking defendant. *See Ling v. State*, 288 Ga. 299, 702 S.E.2d 881, 883 n. 1 (2010); *In re Khan*, 184 Wash.2d 679, 363 P.3d 577, 582 (2015). In *Ling*, the Georgia Supreme Court rejected trial counsel's claim that it was a matter of sound trial strategy to waive the services of an interpreter based on his

---

18. Even though applicant's ineffective-assistance complaint was addressed on direct appeal, this Court would still consider that same challenge in an application for a writ of habe-

as corpus if the applicant were to present new facts in support of it. *See Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex.Crim.App.2004).

concern that "using an interpreter might cause the jury to grow impatient and [he] did not want to draw too much attention to the fact that [the defendant] was not a native English speaker." *Ling*, 702 S.E.2d at 883 n. 1. In that case, the Court stated that counsel's strategy was "not professionally reasonable" because it was based on "speculative fears." *Id.* In *Khan*, the Washington Supreme Court also held that defense counsel's decision not to obtain an interpreter for a defendant who lacked fluency in English was not reasonable trial strategy. *See Khan*, 363 P.3d at 582 (holding that counsel's failure "deprived [the defendant] of the ability to understand many of the questions he was asked on the stand and likely deprived him of the ability to understand many other aspects of the trial," and concluding that "[t]his is not a meaningful strategy worthy of deference").

I also note that, in an analogous case, this Court has held that trial counsel's failure to secure the services of an interpreter for a hearing-impaired defendant constituted ineffective assistance, thereby warranting a new trial. *See Ex parte Cockrell*, 424 S.W.3d 543 (Tex.Crim.App. 2014). In *Cockrell*, this Court held that a reasonably competent attorney "would have realized" that Cockrell was deaf and "should have requested the assistance" mandated by the Code of Criminal Procedure. *Id.* at 547. It further observed that any measures taken by counsel to accommodate Cockrell's disability were "inadequate and ineffectual." *Id.* at 549. In concluding that Cockrell was entitled to post-conviction habeas relief, the Court reasoned that, as a result of counsel's error, Cockrell was "deprived ... of his right to understand the nature of the trial proceedings, to assist in his own defense,

and to confront the witnesses against him." *Id.* at 545. This Court further determined that Cockrell had satisfied the *Strickland* prejudice standard, observing that, because counsel had "fail[ed] to assert applicant's rights to an interpreter to ensure that he could understand the testifying witnesses and participate in his own defense during a substantial portion of the trial, the result of this proceeding is unreliable because of 'a breakdown in the adversarial process that our system counts on to produce just results.'" *Id.* at 557 (quoting *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052). *Cockrell*, in addition to the authorities cited above, constitutes a persuasive legal basis upon which applicant could have sought post-conviction relief in this case. But, as described further below, in spite of the existence of factual and legal bases upon which applicant could have raised a viable ineffective-assistance claim in this case, applicant's *pro se* pleadings are inadequate to raise any colorable claim for this Court to consider. Under these circumstances, the appointment of counsel is necessary in order to give applicant a meaningful opportunity to litigate his ineffective-assistance claim.

**B. Applicant's Instant *Pro Se* Application Is Inadequate**

Applicant's *pro se* habeas application is nonsensical. Applicant argues that appellate counsel was ineffective for failing to bring certain complaints that would show that trial counsel was ineffective, even though he simultaneously acknowledges in his pleadings that a "direct appeal [is] the wrong means for reviewing an ineffective assistant [sic] claim," which is more properly addressed on habeas.[19] Applicant also filed a supplementary memorandum of law

---

19. Ground one in the application states, "Appellate attorney was ineffective on appeal due to his lack of knowledge and failure to properly brief" the ineffective-assistance claims.

It further states that applicant's appellate attorney "failed to properly brief all the errors of trial counsel on appeal, thus relinquishing the right to argue those errors on habeas

that is equally nonsensical.[20] Applicant's pleadings reflect a fundamental misunderstanding of the nature of habeas corpus as a vehicle for raising claims pertaining to the ineffective assistance of trial counsel, in light of his persistent incorrect suggestion that he was unable to raise such claims due to appellate counsel's failure to properly raise them on direct appeal.

The substance of what applicant is attempting to assert for the first time is apparent, even despite the lack of clarity in his *pro se* pleadings. He asserts that trial counsel did not investigate an alternative person, did not interview witnesses, did not investigate the victim's dying declaration of who killed him, did not investigate the victim's mother-in-law's statement about applicant's father as being the actual killer, and did not complain about the lack of notification to the Mexican Consulate of applicant's arrest. In light of these allegations, and, more importantly, in light of the existence of a colorable claim that applicant's trial counsel was ineffective for failing to secure the services of a language interpreter, I conclude that this case should be remanded to the habeas court for appointment of counsel to pursue factual and legal development of these claims.

## III. Conclusion

It is readily apparent to the Supreme Court, as it is to me, that Texas's procedural scheme for addressing ineffective-assistance-of-trial-counsel claims fails to ensure that substantial claims are afforded meaningful consideration. Until there is action either by the Legislature through statutory enactments, or by this Court through judicial decisions that would expand the availability of appointed counsel on collateral review in order to effectuate the constitutional right to the effective assistance of counsel at trial, defendants' ineffective-assistance claims will go largely unaddressed. Consequently, the bedrock principle that a defendant is entitled to an effective trial attorney will remain a theoretical concept in Texas rather than a constitutional guarantee. In light of this recognition, and in light of the fact that this record, on its face, gives rise to a colorable ineffective-assistance claim, I would remand this application for appointment of counsel. Because I conclude that Texas's system for litigating ineffectiveness claims fails to adequately safeguard defendants' Sixth Amendment rights, and because this failure likely results in the loss of a viable ineffective-assistance claim in the present case, I respectfully dissent.

corpus." In that same ground, applicant also challenges the effectiveness of his trial attorney on the basis of counsel's "failure to investigate alternative person in murder case, interview witnesses, [and to properly] investigate [the] victim's dying declaration," among other complaints.

20. For example, in his memorandum of law, applicant states, "By appellate counsel's action's, [sic] appellant was denied the right to complain of the multiple errors by the trial attorney." Applicant then goes on to list those alleged errors, including (1) the trial attorney's failure to conduct an investigation regarding the identity of the perpetrator, (2) the "police department's failure to notify the Mexican Consular [sic] in violation of the 1963 Vienna Convention," (3) "not requiring the prosecution's case to survive the crucible of meaningful adversarial testing," and (4) "failure to inform appellant that he could file an 11.07 with the Court of Criminal Appeals." Applicant does not explain how appellate counsel's performance fell below an objective standard of reasonableness for failing to raise those claims, nor does he attempt to show prejudice as a result of appellate counsel's failure to raise those claims.