**Michael Wayne GRIFFITH, Appellant**

v.

**The STATE of Texas**

**NO. PD–0568–16**

Court of Criminal Appeals of Texas.

Filed: December 14, 2016

Wm. Reagan Wynn, Kearney | Wynn, Fort Worth, TX, Attorneys for Appellant.

District Attorney Tarrant County, Sharen Wilson, Fort Worth, TX, Attorneys for the State.

Hervey, J., filed a concurring opinion in which Keller, P.J., and Keasler, J., joined.

I concur in the judgment of the Court, but I write separately to address the issues raised by Griffith, to explain why I agree with the decision of the court of appeals, and to respond to the dissent.

## FACTS

- On July 26, 2013, Griffith was sentenced and filed a pro se notice of appeal. He also requested a free copy of the record. That same day, the trial court issued an order granting Griffith's request for a free record and appointing appellate counsel.

- On August 13, 2013, appointed appellate counsel filed a timely motion for new trial alleging that Griffith's Eighth Amendment right to be free from cruel and unusual punishment was violated by his disproportionate sentence. (The motion was later overruled by operation of law.).

- On August 15, 2013, a new attorney hired by Griffith filed a motion to substitute as appellate counsel. The next day, the trial court granted the motion.

- On November 22, 2013, the clerk's record was filed in the court of appeals.

- On January 22, 2014, the reporter's record was filed in the court of appeals.

- On April 9, 2014, substitute appellate counsel filed a motion to abate the appeal for an opportunity to file an out-of-time motion for new trial.

- On April 22, 2014, Griffith filed his brief on the merits.

- On April 23, 2014, the motion to abate was denied.

## BACKGROUND

Griffith argues that the period during which a defendant can file a motion for new trial in criminal cases is unconstitutional because it does not allow appellate counsel a meaningful opportunity to present ineffective-assistance-of-counsel claims. However, because there are a number of such claims that can be raised in a motion for new trial, and because Griffith did not

take every step available to him to raise a meaningful ineffective claim in his case, I agree with the decision of the Court to refuse his petition for discretionary review.

## CLAIMS ON MOTIONS FOR NEW TRIAL

Many claims can and should be litigated at the motion-for-new-trial stage. For example, if new evidence is discovered after the jury retires to deliberate, the defendant must allege that the newly discovered evidence entitles him to relief or the claim is waived. *Pena v. State*, 353 S.W.3d 797, 807–08 (Tex. Crim. App. 2011); *see Carlisle v. State*, 549 S.W.2d 698, 704 (Tex. Crim. App. 1977) (reversing and remanding because trial court erroneously overruled motion for new trial based on newly discovered evidence); *see also* Tex. R. App. P. 21.3 (setting out grounds for granting a new trial, many of which refer to newly discovered evidence). In addition, if trial counsel is aware of exculpatory evidence that is not effectively used at trial, the defendant can make an ineffective claim in his motion for new trial. Tex. R. App. P. 21.7 (the court "may receive evidence by affidavit or otherwise"). Finally, counsel can be deficient when he fails to object to erroneous language in a jury charge. *Willis v. State*, No. 06–02–00108–CR, 2003 WL 21524704 (Tex. App.–Texarkana July 8, 2003, no pet.) (mem. op.) (not designated for publication) (holding that the failure of defense counsel to object to erroneous punishment charge authorizing an illegal sentence is ineffective assistance of counsel); *McDade v. State*, No. 06–01–00134–CR, 2002 WL 31719501, at *4 (Tex. App.–Texarkana 2002, no pet.) (not designated

for publication) (holding that counsel was deficient when he failed to object to error in jury charge referring to aggravated assault when the charge was assault on a public servant).

## OUT–OF–TIME MOTION FOR NEW TRIAL

Although Griffith argues that the entire motion-for-new-trial procedural framework is unconstitutional because no meaningful ineffective-assistance-of-counsel claims can be raised using that procedure, I do not believe that we should address his claim because he has not availed himself of every opportunity in his own case to raise a meaningful ineffective claim.

The period for filing a motion for new trial is a critical stage of the proceedings such that a defendant has a right to the effective assistance of counsel under the Sixth Amendment. *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007). If a defendant is denied effective representation at that stage, and the defendant is harmed by that violation, he is entitled to relief. *Id.* The proper remedy is to "reset the appellate deadlines and abate the appeal," allowing an out-of-time motion for new trial to be filed. *Griffith v. State*, No. 08–13–00242–CR, 2016 WL 1639496, at *3 (Tex. App.–El Paso Apr. 22, 2016); *see Harris v. State*, 827 S.W.2d 442, 443 (Tex. App.–San Antonio 1992, no pet.). To prove harm, the defendant must present at least one "facially plausible" claim to the court of appeals that could have been argued in a motion for new trial but was not due to ineffective assistance of counsel.[1] *Cooks,*

1. A similar standard is applied when a trial court fails to hold a hearing on a motion for new trial. The Amarillo Court of appeals has explained that,

> Failure to hold a hearing on appellant's motion for new trial is an abuse of discretion when the motion raises matters not determinable from the record, as long as the defendant provides a supporting affidavit showing reasonable grounds for holding that relief should be granted. The affidavits need not establish a prima facie case, or

240 S.W.3d at 912; *Bearman v. State*, 425 S.W.3d 328 (Tex. App.–Houston [1st Dist.] 2010, no pet.) (abating the appeal for the appellant to file an out-of-time motion for new trial because he presented a "facially plausible" claim that trial counsel was ineffective). To make a "facially plausible" claim, a defendant is not required to marshal all evidence germane to potential ineffective-assistance-of-counsel claims, but he has to do more than just listing things trial counsel may have possibly done (or not done) that could possibly constitute ineffective assistance of counsel. *See Cooks*, 240 S.W.3d at 911–12.

Here, Griffith was represented by counsel during the entire window in which he could file a motion for new trial, and a timely motion for new trial was filed. In addition, there is no record evidence that Griffith's appointed appellate counsel wanted to present an ineffective-assistance-of-counsel claim but was unable to do so due to insufficient time. In other words, Griffith does not even allege that his appointed appellate counsel was unable to present a meaningful ineffective-assistance-of-counsel claim, nor does he claim that he was deprived of effective representation during the motion-for-new-trial period. Instead, Griffith claims that no meaningful ineffective-assistance-of-counsel claim could have been presented because the reporter's record was not filed until almost five months after the deadline. However, he neglects to mention other pertinent facts. For example, Griffith's retained appellate counsel represented him for about eight months before filing the motion to abate in the court of appeals, and for about two-and-one-half of those months, appellate counsel had access to

the clerk's record and the reporter's record. Yet, after all of that time, Griffith only generically alleged that the appeal should be abated because "there are certain issues which require investigation and development." In his brief filed 13 days later, he made another general allegation that "certain issues" require more investigation, but this time he included a laundry list of potential areas in which trial counsel could have been ineffective:

> the failure to conduct necessary investigation and to interview witnesses; the failure to file discovery motions; the failure to adequately review medical records; the failure to adequately prepare; the failure to object to the introduction of extraneous offenses/bad acts; the failure to object to speculative testimony from unproved, unqualified witnesses; the failure to test witnesses regarding their purported expertise, and/or the scientific basis for their 'expert' testimony, the failure to consult with and/or obtain expert assistance for purposes of trial; the failure to adequately present evidence to support the motion to suppress; the failure to object to improper voir dire by the State; and the failure to object to improper closing arguments by the State.

Although these contentions may appear more specific than the initial allegation that "certain issues" require more investigation, they still fall woefully short of even a "facially plausible" claim. *Id.* For instance, Griffith makes two record-based claims that his trial counsel failed to object to improper voir dire and closing arguments by the State. But, after almost 80 days with the reporter's record, Griffith

even reflect every component legally required to establish relief. It is sufficient if a fair reading of the affidavit gives rise to reasonable grounds in support of the allegations.

*Obella v. State*, No. 07–15–00271–CR, —— S.W.3d ——, ——, 2016 WL 3660018, at *2 (Tex. App.–Amarillo 2016, pet. filed) (per curiam) (internal citations omitted).

failed to give even one record cite to support his bald assertions. *Id.*

It seems to me that, instead of attacking the motion-for-new-trial procedural framework, counsel's time would have been better spent trying to present a "facially plausible" claim so that Griffith could have the opportunity he claims he never had—a chance to present a meaningful ineffective-assistance-of-counsel claim in a motion for new trial. After all, according to counsel there were plenty of "facially plausible" claims that could have been made.

Beyond the motion for new trial, if in fact a defendant has a plausible ineffective-assistance-of-counsel claim, many of them can be addressed on direct appeal with the support of both the clerk's and reporter's records. Finally, these claims can also be addressed on habeas.

## THE DISSENT

The dissent once again insinuates that this Court unfairly ignores the needs of the poor by denying them sufficient and/or effective assistance of counsel. And, while this is not a post-conviction writ case, much time is spent dwelling on the perceived ill of our habeas system, and the part this Court plays in effectuating that system. As succinctly stated by the dissent,

> in *Ex parte Garcia,* I highlighted what I view as an ongoing and widespread problem regarding the absence of appointed habeas counsel to assist indigent applicants in pursuing their colorable ineffective-assistance claims.

Dissenting Op. at 727 (citing *Ex parte Garcia,* 486 S.W.3d 565 (Tex. Crim. App. 2016) (Alcala, J., dissenting, in which Johnson, J., joined)). However, in reality we have no idea how widespread the problem is. Further the dissent adds that,

> In *Garcia,* I urged this Court to take steps towards remedying this problem

through the appointment of counsel for indigent habeas applicants who have colorable ineffective-assistance claims, but this Court has refused to require the appointment of counsel under those circumstances, which would largely rectify this problem. As I observed in *Garcia,* the statutory basis for appointing counsel under those circumstances already exists in Texas. In particular, I noted that Article 1.051 of the Texas Code of Criminal Procedure entitles an indigent habeas applicant to appointed post-conviction counsel whenever the habeas court determines that "the interests of justice of justice require representation." Based on that statutory authority, I suggested that this Court should remand any *pro se* habeas application to the habeas court for appointment of counsel in the interest of justice when "either the pleadings or the face of the record gives rise to a colorable, nonfrivolous [ineffective-assistance] claim."

*Id.* at 727–28 (internal citations omitted). The dissent seems to ignore the fact that it is not up to the judiciary to amend the manner in which attorneys are appointed. That is for the legislature to decide. And while the dissent appears to suggest that merely appointing a lawyer will "fix the system," a few considerations are missing.

When a writ is granted by this Court, the trial court can appoint an attorney to represent an indigent defendant. Further, many trial courts are already appointing counsel for purposes of representation on writ, and it will do the system and everyone in it absolutely no good, if the attorney is not sufficiently skilled to handle a writ. This point applies whether the attorney handling the writ is appointed or retained. Thus, even the "affluent" who can afford habeas counsel are not served if the attorney is unskilled.

Despite proclamations that the system "is broken" and the problem of ineffective assistance of counsel is "widespread" (Dissenting Op. at 729) we have no numbers, no statistics, no real hard facts supporting the notion that thousands of indigent defendants are being unfairly treated. We cannot even predict how many ineffective assistance of counsel claims have had or will have merit.

And if the problem is so widespread, are we suggesting that almost the entire defense bar (as the list of those attorneys who presently handle habeas is quite small) is inept? This court and "legal scholars" know that concept is ridiculous.

Some proposals such as amending the Fair Defense Act to supply guidelines and requirements for attorneys who wish to handle more writs could be useful. Educating attorneys specifically in the realm of writ law would also be useful.[2] But most importantly, this Court already fairly and fully reviews all writs as required by the Texas Constitution and laws of this State.

Relying on lyrical analysis to defend our practice against grievances over the manner in which this Court performs its duties, I cite the following

You say you want a revolution

Well, you know

We all want to change the world

You tell me that it's evolution

Well, you know

We all want to change the world

But when you talk about destruction

Don't you know that you can count me out

Don't you know it's gonna be

All right, all right, all right. . . .

The Beatles, Revolution (Apple Records 1968).

Alcala, J., filed a dissenting opinion.

For poor people, the Texas scheme for addressing claims of ineffective assistance of counsel is broken. Legal scholars know this, and the Supreme Court has essentially acknowledged this.[1] Instead of addressing this problem, some people will pivot and rationalize that Texas is doing better than we used to do at providing counsel for indigent defendants. Other people will continue to pivot and rationalize, arguing that Texas spends a lot of money providing counsel for indigent defendants. And others will pivot by proclaiming that many

---

**2.** The Court of Criminal Appeals and the State Bar of Texas has "rolled out" the first Writ Academy, which is specifically designed to train attorneys to properly litigate post-conviction habeas corpus claims.

**1.** *See, e.g.,* Eve Brensike Primus, *Effective Trial Counsel After Martinez v. Ryan: Focusing on the Adequacy of State Procedures,* 122 Yale L.J. 2604 (2013); Ty Alper, *Toward a Right to Litigate Ineffective Assistance of Counsel,* 70 Wash. & Lee L. Rev. 839 (2013); Eve Brensike Primus, *Procedural Obstacles to Reviewing Ineffective Assistance of Trial Counsel Claims in State and FederalPostconviction Proceedings,* American Bar Association, Criminal Justice, Vol. 24, Number 3 (2009), http://www.americanbar.org/content/dam/aba/publishing/criminal_justice_ section_newsletter/crimjust_cjmag_24_3_primus.authcheckdam.pdf.;

Emily Garcia Uhrig, *A Case For Constitutional Right to Counsel in Habeas Corpus,* 60 Hastings L.J. 541 (2009); Eve Brensike Primus, *Structural Reform in Criminal Defense: Relocating Ineffective Assistance of Counsel Claims,* 92 Cornell L. Rev. 679 (2007); *see also Martinez v. Ryan,* 566 U.S. 1, 132 S.Ct. 1309, 1318, 182 L.Ed.2d 272 (2012); *Trevino v. Thaler,* —— U.S. ——, 133 S.Ct. 1911, 1918–21, 185 L.Ed.2d 1044 (2013). In addition to these resources, law review articles have discussed this problem. *See, e.g.,* Eric M. Freedman, *Enforcing the ABA Guidelines in Capital State Post–Conviction Proceedings after Martinez and Pinholster,* 41 Hofstra L. Rev. 591 (2012–2013); Sarah L. Thomas, Comment: *A Legislative Challenge: A Proposed Model Statute to Provide for the Appointment of Counsel in State Habeas Corpus Proceedings for Indigent Petitioners,* 54 Emory L.J. 1139 (2005).

claims should be litigated during the motion for new trial stage and that habeas attorneys must be educated and qualified to represent indigent applicants. Of course, all of those rationalizations are true, but they miss the point. The point is that indigent defendants in Texas ordinarily do not have a viable procedural avenue for challenging the ineffectiveness of their trial attorneys. This is a problem that is unique to the poor in Texas because affluent people, who can afford to hire habeas counsel, have an adequate procedural avenue for challenging the ineffectiveness of trial counsel through post-conviction habeas applications.[2] A poor person, of course, like a rich person, can file his habeas application challenging his trial attorney's ineffectiveness, but he will almost certainly fail because, as a pro se litigant, he is likely unversed in the pleading and proof requirements for obtaining habeas relief. *See Ex parte Garcia*, 486 S.W.3d 565 (Tex. Crim. App. 2016) (mem. op.) (Alcala, J., dissenting); *see also Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 1317–18, 182 L.Ed.2d 272 (2012) (observing that, "[w]ithout the help of an adequate attorney, a prisoner will have [ ] difficulties vindicating a substantial ineffective-assistance-of-trial-counsel claim" on post-conviction review; thus, a post-conviction proceeding, "if undertaken without counsel . . . may not have been sufficient to ensure that proper consideration was given to a substantial claim"). In contrast, a person who can afford a post-conviction habeas attorney to navigate that procedural scheme will have a reasonable forum to challenge the effectiveness of his trial attorney. The present system works for rich people and fails for poor people. Yet, this Court continues to do nothing to fix this broken process. This Court happily sings

that everything is alright, which, of course, it is, for non-indigent habeas applicants who can afford to hire counsel.

The instant pending petition for discretionary review filed by Michael Wayne Griffith is similar to the habeas application filed by Jose Sandoval. Each of these litigants asks this Court to address the problem faced by indigent defendants who seek a meaningful opportunity to challenge the ineffectiveness of trial counsel at a stage of the proceedings when they are guaranteed the assistance of counsel. *See Griffith v. State*, No. 08–13–00242–CR, 2016 WL 1639496 at *2 (Tex. App.–El Paso Apr. 22, 2016) (not designated for publication) (pet. granted). The *Griffith* petition for discretionary review, like the Sandoval habeas application, gives this Court the opportunity to address these problems. I would grant appellant's petition for discretionary review that challenges whether the Texas procedural scheme governing motions for new trial in criminal cases violates a criminal defendant's Sixth Amendment right to effective assistance of counsel on motion for new trial and his right to due process of law because, under this scheme, appellate counsel are not given a meaningful opportunity to present claims that trial counsel rendered ineffective assistance of counsel. Because this Court declines to address the merits of appellant's arguments, by refusing to hear this petition for discretionary review, I respectfully dissent.

## I. Background

Appellant was convicted by a jury of aggravated assault with a deadly weapon and sentenced to twenty years' imprisonment. At trial, appellant admitted that he shot the injured party during a dispute over an unpaid bill, but he claimed that he

---

2. Aside from affluent people, some indigent defendants are fortunate enough to be aided by pro bono counsel provided by a law school or private organization.

acted in self defense. After he was sentenced, appellant filed a motion for new trial asserting that his sentence was cruel and unusual. That motion was overruled by operation of law. In the court of appeals, while appellant's case was on appeal, counsel filed a motion to abate the appeal to allow appellant to investigate an ineffective trial counsel claim and file a motion for new trial. The court of appeals denied that motion without written order. The court explained that appellant's motion to abate the appeal was filed eight months after appellate counsel began representing appellant and that appellant's pleading fell short of the showing that must be made in a motion to abate because it included only a general allegation that there are "certain issues which require investigation and development through a motion for new trial."

In his brief filed in the court of appeals, appellant asserted that a number of potential issues "appear to exist" and warrant further investigation, including "the failure to conduct necessary investigation and to interview witnesses; the failure to file discovery motions; the failure to adequately review medical records; the failure to adequately prepare; the failure to object to the introduction of extraneous offenses/bad acts; the failure to object to speculative testimony from unproved, unqualified witnesses; the failure to test witnesses regarding their purported expertise, and/or the scientific basis for the 'expert' testimony, the failure to consult with and/or obtain expert assistance for purposes of trial; the failure to adequately present evidence to support the motion to suppress; the failure to object to improper voir dire by the State; and the failure to object to improper closing arguments by the State." The court of appeals characterized appellant's pleadings as conclusory, and it faulted appellant for failing to show that the allegations were at least facially plausible. The court of appeals held that, in appel-

lant's case, the current Texas procedural framework regarding motions for new trial did not deprive him of a meaningful opportunity to present a claim of ineffective assistance of his trial counsel in derogation of his due-process rights and his right to effective assistance of counsel on appeal. The court of appeals explained that appellant had also failed to prove that he was harmed or prejudiced by the rules of appellate procedure.

In his first ground in his petition, appellant asks,

Does the Texas procedural scheme governing motions for new trial in criminal cases violate a criminal defendant's Sixth Amendment right to effective assistance of counsel on motion for new trial and appeal and his right to due process of law because, under the scheme appellate counsel are not given a meaningful opportunity to present claims that trial counsel rendered ineffective assistance of counsel?

Appellant asserts that this issue is of paramount importance and has been recently addressed by the Supreme Court and this Court. He observes that the Supreme Court and this Court have recognized that, under the current procedural scheme, it is "virtually impossible" for appellate counsel to adequately present a claim of ineffective assistance of trial counsel on direct review. He explains that it is virtually impossible for a defendant to prevail on a claim of ineffectiveness in a motion for new trial and direct appeal, yet those are the only times when an indigent defendant has the right to appointed counsel under the Sixth Amendment. Accordingly, appellant contends that this case involves significant constitutional rights with serious consequences for appellants and their ability to receive effective assistance of counsel during the appellate process.

Appellant's petition shows that, under the current construction of the Texas Rules of Appellate Procedure, the thirty-day deadline found in Rule 21.4 is a strict deadline, and a trial court lacks jurisdiction to consider any motion-for-new-trial claim not raised prior to that deadline. *See* Tex. R. App. P. 21.4. Appellant also notes that a person convicted of a crime has a Sixth Amendment right to effective assistance of counsel during the motion for new trial and appellate process. *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007); *Evitts v. Lucey*, 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). But there is no guaranteed right to appointed counsel at the post-conviction habeas stage for non-death-penalty cases. Thus, under the current interpretation of the Sixth Amendment, the only time that a criminal defendant is guaranteed effective counsel and has an opportunity to litigate a claim of ineffective assistance of trial counsel is during the motion for new trial and appellate process. He contends, however, that the Texas motion-for-new-trial and appellate procedural scheme makes it virtually impossible for appellate counsel to adequately present an ineffective assistance of trial counsel claim on direct review.

Appellant gives specific arguments about the ineffective-assistance claims that he would have pursued had he had an adequate amount of time in which to present them in a motion for new trial. He discusses whether counsel was ineffective by failing to discover certain letters that should have been introduced into evidence, by failing to object to irrelevant and extraneous evidence, by failing to object to the deputy's personal opinion about the appellant's storage of guns, and he asserts a number of other complaints. Appellant explains that, without the appellate record to review, there was no meaningful opportunity for appellate counsel to litigate his complaints within the procedural framework currently in place.

Appellant is complaining that the procedural structure of the appellate scheme has deprived him of any meaningful opportunity to present possible claims of ineffective assistance of his trial counsel on motion for new trial or direct appeal. Appellant summarizes that a motion for new trial and direct appeal are the only procedural avenues in which a criminal defendant is guaranteed the effective assistance of counsel to raise a claim of ineffective assistance of trial counsel. He argues that the Texas scheme that makes it virtually impossible to raise such a claim violates the Sixth Amendment and his due-process rights. He continues by arguing that this Court could order that, in situations like the present one, the court of appeals should abate the appeal and allow counsel on direct appeal to fully develop and litigate ineffective-assistance-of-trial-counsel claims. This would eliminate many of the issues this Court has struggled with concerning the appointment of post-conviction counsel and consideration of subsequent writ claims.

The arguments presented in the instant petition for discretionary review mirror those in Sandoval's habeas application. In his habeas application, Sandoval alleges that he was constructively denied counsel on direct appeal because of external constraints placed on appellate counsel by the procedural scheme for criminal appeals and habeas review in Texas. Sandoval contends that he was prevented from raising potentially meritorious claims due to the structure of the Texas system that makes it virtually impossible to challenge the ineffectiveness of trial counsel on direct appeal. Sandoval requests relief in the form of an out-of-time appeal so that his appointed appellate attorney could have a meaningful opportunity to research and

raise a meritorious claim of ineffective assistance of counsel during the direct appeal of his case. That is the same relief requested by Griffith in his pending petition for discretionary review. Today, this Court denies the habeas application filed by Sandoval.

## II. Analysis

Oddly, the court of appeals faulted appellant for failing to develop extra-record evidence to establish the error and harm in this case, yet the inability to develop extra-record evidence is precisely what appellant is complaining about in this appeal. The court of appeals's analysis erroneously faults appellant for failing to do what the rules of appellate procedure expressly disallow: An appellant may not go outside the appellate record in making his arguments for relief on appeal. *See* TEX. R. APP. P. 38.1(i). The court of appeals's analysis, therefore, places appellant in a Catch-22 where he is denied a meaningful appeal for complying with the rules of appellate procedure.

On a broader level, this case and Sandoval's habeas application highlight the Catch-22 that most indigent defendants face. Regardless of whether a litigant challenges ineffective assistance of counsel on direct appeal, on the one hand, or on habeas, on the other hand, the procedural scheme he faces is designed for him to fail, unless, of course, he can afford to hire counsel to represent him at the post-conviction stage.

## A. It is Theoretically Possible to Challenge Ineffective Assistance of Counsel on Direct Appeal, But That Is Not a Reasonable Avenue for Most Cases

An indigent defendant with appointed appellate counsel can challenge the ineffectiveness of his trial attorney through a motion for new trial and/or on direct appeal. But at the motion-for-new-trial stage, when he has the right to appointed counsel, a defendant is unlikely to have access to the trial record or the necessary evidence to plead and prove that his trial attorney was ineffective. The thirty-day window of time for filing a motion for new trial, which is almost always needed to develop and present evidence of ineffective assistance of counsel, is rarely a reasonable option because the trial record has not been prepared. Thus, abatement of the appeal would be necessary in order to obtain the trial record to enable appellants to produce and present the evidence and arguments required to establish an ineffectiveness claim on direct appeal. And at the direct-appeal stage, in the absence of a motion-for-new-trial hearing, this Court will presume that counsel performed adequately. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). As a general rule, therefore, direct-appeal litigation of ineffective assistance of counsel has too many likely pitfalls to be an adequate procedural vehicle for challenging the ineffectiveness of a trial attorney. *See, e.g., Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (observing that "the inherent nature of most ineffective assistance claims" means that the trial record will often fail to "contai[n] the information necessary to substantiate" the claim).

The concurring opinion unfairly criticizes appellant's counsel. The concurring opinion suggests that "counsel's time would have been better spent trying to present a 'facially plausible' claim." This criticism misunderstands the procedural scheme in Texas that permits only a thirty-day window of time for filing a motion for new trial. By the time that counsel spent time complaining about the unfairness of Texas's appellate structure, the permissible window of time for filing a motion for new trial had long ago passed.

The problem is not that, in theory, an appellate attorney could file a motion for new trial to assert these complaints; the problem is that ordinarily an attorney cannot effectively present a complaint at that juncture given that there is an inadequate amount of time to obtain the record, investigate matters outside the record, and plead legal claims within the thirty-day window of time in which all of these things must be done.

**B. It is Possible to Challenge Ineffective Assistance of Counsel on Habeas, But Most Pro Se Litigants Are Too Unskilled to Plead and Prove Their Claims**

An indigent defendant may challenge the ineffectiveness of his trial attorney through post-conviction habeas litigation, but that is also an inadequate procedural vehicle in almost all cases because, as explained below, this Court has refused to enforce statutory provisions that would require the appointment of habeas counsel in appropriate cases. In my dissenting opinion in *Ex parte Garcia*, I highlighted what I view as an ongoing and widespread problem regarding the absence of appointed habeas counsel to assist indigent applicants in pursuing their colorable ineffective-assistance claims. *See, e.g., Garcia*, 486 S.W.3d at 574–75. I explained that, in many cases, the first opportunity for a defendant to challenge the ineffectiveness of his attorney arises in a post-conviction habeas proceeding, but, at that procedural juncture, an indigent applicant has no established constitutional right to appointed counsel. *See id.* at 567–68. Given that many indigent applicants must proceed *pro se* on habeas, as here, I observed that claims of ineffectiveness, even those that have merit, "will almost always fail because the *pro se* applicant is unaware of the legal standard and evidentiary requirements necessary to establish his claim." *Id.* at 567.

My dissenting opinion in *Garcia* merely recognized the problem that had already been highlighted by the Supreme Court in *Martinez v. Ryan*, in which it stated,

> Claims of ineffective assistance at trial often require investigative work and an understanding of trial strategy. When the issue cannot be raised on direct review, moreover, a prisoner asserting [such a] claim in an initial-review collateral proceeding cannot rely on a court opinion or the prior work of an attorney addressing that claim.

*Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 1317, 182 L.Ed.2d 272 (2012). In addition, the Supreme Court in *Martinez* noted that prisoners "unlearned in the law" may have difficulty complying "with the State's procedural rules or may misapprehend the substantive details of federal constitutional law." *Id.* Moreover, it observed that prisoners, while confined to prison, are "in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record." *Id.* In light of all these considerations, the Supreme Court concluded that, in order to present an ineffective-assistance claim in accordance with the State's procedures, "a prisoner likely needs an effective attorney." *Id.* The absence of appointed counsel to facilitate the litigation of ineffectiveness issues, it explained, was of particular concern, given that the right at stake, the right to the effective assistance of counsel, is a "bedrock principle in our justice system," without which the very fairness and accuracy of the underlying criminal proceeding cannot be guaranteed. *Id.*

In *Garcia*, I urged this Court to take steps towards remedying this problem by enforcing the state statutory provision that, in my view, requires a habeas court to appoint counsel for indigent habeas applicants who have colorable ineffective-as-

sistance claims. *Garcia*, 486 S.W.3d at 570. In particular, I noted that Article 1.051 of the Texas Code of Criminal Procedure entitles an indigent habeas applicant to appointed post-conviction counsel whenever the habeas court determines that "the interests of justice require representation." *Id.* at 577–78 (quoting TEX. CODE CRIM. PROC. art. 1.051(d)(3)). Based on that statutory authority, I suggested that this Court should remand any *pro se* habeas application to the habeas court for appointment of counsel in the interests of justice when "either the pleadings or the face of the record gives rise to a colorable, nonfrivolous [ineffective-assistance] claim." *See id.* After all, our role, as the State's highest criminal court, is not to give lower courts unfettered discretion to ignore statutory language, but it is instead to review whether they have misapplied the law to the facts, and to enforce the law as it is written. I have explained that expanding the availability of appointed counsel under these circumstances would further the interests of justice by ensuring that substantial claims of ineffectiveness were given full and fair consideration by this Court on post-conviction review, thereby reducing the likelihood that violations of defendants' bedrock Sixth Amendment rights would go unremedied. *Id.* at 567–68, 582. My suggestion was quite simple and in accordance with the statutory language and with what this Court already requires in its remand orders that instruct a habeas court to appoint counsel for an indigent defendant when an evidentiary habeas hearing is held. Thus far, however, this Court has refused to enforce the plain language in the statute that requires the appointment of habeas counsel when the interests of justice require counsel.

Because of this Court's refusal in *Garcia* and subsequent cases to compel habeas courts to appoint attorneys for indigent defendants at the post-conviction stage, even when the interests of justice obviously require representation, this Court has created a situation in which indigent defendants functionally have no recourse to challenge the ineffectiveness of their trial attorneys through the post-conviction writ process. *See id.* at 574–75. As a general rule, therefore, habeas litigation pursued by a pro se defendant has too many likely pitfalls to be an adequate procedural vehicle for challenging the ineffectiveness of a trial attorney.

## C. The Catch–22 is Real and Unaddressed by this Court

This Court has before it the instant petition for discretionary review and the Sandoval habeas application, each of which highlights this Catch–22 faced by almost all poor defendants in Texas. The instant petition is at the direct-appeal stage, and he is complaining about the court of appeals's refusal to abate his case so that he could investigate, plead, and prove his claim of ineffective trial counsel. *See Griffith*, 2016 WL 1639496, at *2. Sandoval's habeas application discusses a similar request for a remedy that would allow resetting the appellate timetable to permit him to pursue an ineffective-assistance-of-counsel claim at the motion-for-new-trial stage. Alternatively, Sandoval requests habeas counsel, which, as I explained in *Garcia*, should be appointed by the habeas court in the interests of justice when an applicant has demonstrated that he has a colorable claim. I would grant the instant petition for discretionary review and hold that appellant is entitled to have this Court reset the appellate timetable for him to pursue a motion for new trial because he was deprived of a fair opportunity to litigate ineffectiveness issues at that stage due to the Texas appellate procedural scheme.

## III. Conclusion

It's time to make a change in Texas to remedy the system created by this Court

through its repeated refusal to require habeas courts to appoint habeas counsel when the interests of justice are at stake, which has resulted in indigent, non-death-penalty defendants being unable to adequately challenge the effectiveness of their trial counsel. Given that this Court has refused to require the appointment of counsel for indigent habeas applicants who have colorable claims of ineffective assistance of counsel, this Court's only remaining option is to permit appellants like this appellant to reset the appellate timetable for the investigation and proof of their claim. The bottom line is this: Rich people in Texas have opportunities to challenge the ineffectiveness of their trial attorneys, but poor people do not. This is not a procedural scheme that society should find tolerable. For these reasons, I respectfully dissent from this Court's refusal to grant this petition for discretionary review that presents these important constitutional issues.